IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Cash Smith

    Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

Civil No. 04-6234-AA
OPINION AND ORDER

Kathryn Tassinari
Robert Baron
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Craig Casey
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

David Blume
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

///

///

1   - OPINION AND ORDER

AIKEN, Judge:

Claimant, Cash Smith, brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied the plaintiff's application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-83(f). For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

**PROCEDURAL BACKGROUND**

The plaintiff applied for SSI on September 22, 1999. Tr. 78-79. The application was denied initially and on reconsideration, and the plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 60-62, 65-67. A hearing was held on June 24, 2001. Tr. 305-49. On September 4, 2001, the ALJ issued a decision denying the plaintiff's claim, and on November 30, 2001, the Appeals Council denied the plaintiff's request for review. Tr. 3-4, 7-16.

The plaintiff appealed for judicial review, and the Commissioner filed a motion to reverse and remand the case for further administrative proceedings on the issue of whether the plaintiff's mental impairment meets the requirements of Listing 12.05C and to further develop the record regarding the effects of the plaintiff's alcohol use. Tr. 287, 289. On October 2, 2002, United States District Court Judge Helen J. Frye granted the Commissioner's motion and ordered the case to be remanded for further proceedings. Tr. 291.

A hearing was held before another ALJ on March 23 and 24,

2 - OPINION AND ORDER

2004. Tr. 436, 452. On May 15, 2004, the ALJ issued a decision denying the plaintiff's claim. Tr. 262-270. The ALJ's decision became the Commissioner's final decision when the plaintiff did not file exceptions and the Appeals Council did not assume jurisdiction. See 20 C.F.R. §416.1484(d).

## STATEMENT OF THE FACTS

Plaintiff was age 40 to 45 during the relevant period under review. Tr. 78. He completed high school in 1977 after taking special education classes, and had vocational training in construction/landscaping. Tr. 95. He had past relevant work experience as a donation sorter, shop helper, green chain puller, janitor, floor maintenance worker, and loader/helper. Tr. 441-42.

The plaintiff alleges disability based on lower and upper back problems and mental impairment. Tr. 78, 89. The relevant medical evidence is discussed below.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

3  - OPINION AND ORDER

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant

4    - OPINION AND ORDER

can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary.

In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

Here, the ALJ found at step one that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 266, 270. This finding is not in dispute.

At step two, the ALJ found that the plaintiff's borderline intellectual functioning was a severe impairment, but that his back condition and alcohol use were non-severe. Tr. 266-68. This finding is implicitly in dispute, because the plaintiff alleges that he has the severe impairment of mental retardation, not borderline intellectual functioning.

At step three, the ALJ found that the plaintiff's impairments did not meet or equal the requirements of a listed impairment, including Listing 12.05C. Tr. 266-270. This finding is in dispute.

The ALJ then determined that plaintiff had the residual functional capacity for all exertional levels of work, and that his borderline intellectual functioning limited him to simple, repetitive tasks. Tr. 269-270. This finding is in dispute.

5    - OPINION AND ORDER

At step four, the ALJ found that the plaintiff was able to perform his past relevant work as a janitor and was therefore not disabled. Tr. 269-270. This finding is in dispute.

The ALJ did not address step five because he found the plaintiff not disabled at step four.

The plaintiff alleges that the ALJ erred in finding that the plaintiff's mental impairment does not meet the criteria of Listing 12.05C and in finding that the plaintiff retains the ability to perform work as a janitor.

## DISCUSSION

The plaintiff argues that the ALJ erred in finding that his condition does not meet or equal the criteria of Listing 12.05C. The defendant argues that the ALJ's finding was proper and based on substantial evidence in the record.

To meet Listing 12.05C, a claimant must have (1) significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22); (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, §12.05C.

The ALJ found that the first criteria in the Listing was not met; the plaintiff's subaverage intellectual functioning did not result in significant loss in adaptive functioning. The ALJ based this finding on the plaintiff's completion of high school, his past work experience, and his doctors' statements that he may be capable of working and performing simple work tasks. Tr. 268-

69. Adaptive functioning refers to "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting. American Psychiatric Ass'n., Diagnostic & Statistical Manual of Mental Disorders, 42 (4th ed. TR 2000).

The ALJ based this finding in part on the fact that the plaintiff had completed high school. However, the plaintiff required special education classes in order to do so. Tr. 171. Because these classes require lower standards of personal independence, the plaintiff's completion of high school with the aid of such classes is not a strong indication of his overall adaptive functioning.

The ALJ also based this finding on his conclusion that the plaintiff was able to "support himself by working." Tr. 268. However, although the plaintiff has worked in the past, the Goodwill records indicate that he has not been able to fully support himself. Tr 144. A summary of the plaintiff's meeting at the Vocational Rehabilitation Division shows that the plaintiff "has been in the system for 20 years" and has not been able to sustain financial independence. Id. Furthermore, the fact that the plaintiff worked or attempted to work in the past is not determinative: "...the fact that a person holds down a job doesn't prove he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation." Henderson v. Barnhart, 349 F.3d 434, 435. (7th Cir. 2003). Therefore, although the plaintiff was at times able to partially support himself by working, the ALJ erred in

7    - OPINION AND ORDER

using this fact as a basis for his finding that the plaintiff's adaptive functioning was not impaired.

The ALJ also based this finding on the statements of the plaintiff's doctors about his ability to work and do simple work tasks. Dr. Redner examined the plaintiff twice, reviewed his records, and performed intellectual testing; she suggested that he might be able to work despite his intellectual impairments. Tr. 175. Dr. Redner stated that "observation of his performance over time should help determine whether he is able to work outside of a supported or sheltered setting." Tr. 175. Also, Disability Determination Service (DDS) sources who examined the plaintiff stated that he would be able to perform simple, repetitive types of work tasks. Tr. 181, 198.

However, these doctors' statements are only partially determinative of the plaintiff's ability to work. Having the ability to perform some requirements of a job does not mean that the plaintiff has the ability to sustain competitive work. Despite the plaintiff's efforts to work, the record shows that the plaintiff has limited work experience and was found to be competitively unemployable by Goodwill Industries. Tr. 133, 171, 178. According to Goodwill, he could not "carry through with staying at work," had "attendance issues," and "let other issues take priority over work." Tr. 144. Goodwill determined that the plaintiff required a sheltered work environment with extra help in retention services, and was unable to sustain competitive work. Tr. 405-406. As Dr. Redner opined, the plaintiff's working experience would answer the question of whether he is able to work competitively; his work at Goodwill determined that

8   - OPINION AND ORDER

the answer is "no." The ALJ erred in using these statements by the plaintiff's doctors as a basis for this finding.

For the above reasons, the ALJ erred in finding that the plaintiff's subaverage intellectual functioning did not result in significant loss in adaptive functioning, and the plaintiff has met the first criteria for the Listing.

The ALJ found that the second criteria, a valid IQ of 70 or below, was not met because he concluded that variations in the plaintiff's IQ scores indicated that the scores were "not reliable and of uncertain validity." Tr. 268. In 1985, the plaintiff scored an IQ of 77. Tr. 420. He was tested again in 1999 by Dr. Redner, and his verbal IQ was shown to be 66, his performance IQ was 74, and his full-scale IQ was 66. Tr. 173. Dr. Redner noted that the test results showed a reduction in scores from results reported in 1985, and noted that potential contributors to this difference included differences between earlier and updated intelligence test forms, variability of performance over time, and decline in skills and knowledge due to disuse or other factors. Tr. 174. She also noted that the plaintiff put forth good effort, and that the test results were a good representation of his functional abilities. Tr. 171. In 2002, Dr. Redner again examined the plaintiff. Tr. 427. The plaintiff's scores varied somewhat from the 1999 results; he had a verbal IQ of 71, a performance IQ of 74, and a full-scale IQ of 70. Tr. 430. However, Dr. Redner felt that these scores were similar to those from his previous evaluation, and concluded that the overall results of testing appeared to be a good representation of his current functional abilities. Id.

9   - OPINION AND ORDER

The ALJ may not substitute his judgment for that of the psychologist, or reject IQ scores based on speculative inferences drawn from the record. Morales v. Apfel, 225 F.3d 310, 318 (3rd Cir. 2000); Cole v. Calahan, 970 F. Supp. 708, 711 (S.D. Iowa, 1997). Here, the ALJ rejected the plaintiff's IQ scores because they had varied, and stated that this variation indicated that the scores were invalid and not reliable. However, Dr. Redner found that the plaintiff's scores were a good representation of his abilities despite the fact that there was some variation. Therefore, the ALJ may not reject them on the basis of the variation, and the rejection of the plaintiff's scores was erroneous.

Furthermore, the regulations provide that in cases where more than one IQ is derived from the test administered, ie., where verbal, performance, and full-scale IQs are provided, the lowest of these scores is used in conjunction with Listing 12.05. 20 C.F.R. Part 404, subpart P, Appendix 1, §12.00 D(6)(c); Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996); Fanning v. Bowen, 827 F.2d 631 (9th Cir. 1987). The plaintiff had IQ scores of 70 and below, with a low score of 66; therefore, he has met the Listing criteria of an IQ of 70 or below.

The ALJ also found that the third criteria of the Listing was not met, concluding that the plaintiff did not have a physical or other mental impairment that imposed additional and significant work-related limitation of function. Tr. 268. The Ninth Circuit emphasized in Fanning v. Bowen that a finding of severity is not necessary to satisfy this criteria; the requirement is only that the impairment has more than a slight or

10   - OPINION AND ORDER

minimal effect on the claimant's ability to work. 827 F.2d at 633.

In the plaintiff's case, there is ample evidence that his back pain was an additional impairment that had more than a minimal impact on his ability to perform basic work activities. The medical record shows that the plaintiff's back pain was chronic and severe enough to warrant repeated medical attention. The back pain began in 1978 due to an injury at work. Tr. 182. In January 1990, the plaintiff sought emergency treatment for low back pain. Tr. 233. X-rays of the thoracic spine in 1991 revealed mild degenerative changes. Tr. 223. From 1993-1999, the plaintiff repeatedly saw Dr. Beckwith about his back pain, and Dr. Beckwith diagnosed him with "chronic and recurring back sprain." Tr. 166-68. In 1999, the plaintiff was seen in the emergency room for a back strain. Tr. 238. In 2000, Dr. Morrell examined the plaintiff at the request of the agency and diagnosed the plaintiff with chronic low back pain, likely related to muscle strain. Tr. 184. Dr. Morrell also noted that there were no inconsistencies or poor efforts on the part of the plaintiff. Tr. 182. A CT scan in February 2001 also showed mild degenerative changes of the cervical spine. Tr. 255.

The plaintiff's back pain affects his ability to perform work activities. His back pain only allows him to work for two to three hours at a time, and starts to "give out" after he takes a break and then returns to work. Tr. 182, 475. The plaintiff repeatedly reported missing work due to his back pain, and was given doctor's notes to excuse work missed or for lighter work duty. Tr. 166-168, 434. These effects meet the requirement of

11  - OPINION AND ORDER

"more than a slight or minimal" impairment of the claimant's ability to work. Fanning, 827 F.2d at 633. Therefore, the ALJ erred in finding that the third criteria of the Listing was not met.

The ALJ erred in finding that the plaintiff had not met the criteria of Listing 12.05C. According to Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993), if a claimant's impairment is medically equivalent to the criteria of a Listing, the claimant is conclusively presumed to be disabled, and the case may be remanded for benefits. Moreover, because the error found by this court allows a reversal of the ALJ's decision, the court declines to address the plaintiff's other allegations of error.

**CONCLUSION**

The Commissioner's decision is not based on substantial evidence, and is therefore reversed and remanded for payment of benefits.

IT IS SO ORDERED.

Dated this 7 day of September, 2005.

_____
Ann Aiken
United States District Judge

12 - OPINION AND ORDER